UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

ANTONIA S.,[1]

      Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

———————————————————

6:20-CV-6407 (JLS)

## DECISION AND ORDER

Plaintiff Antonia S. brought this action under the Social Security Act (the "Act"), seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 12. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 16. Plaintiff replied. Dkt. 17.

For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

———————————————

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On June 16, 2016, Plaintiff applied for benefits under the Act, Tr.[2] 196, 198; alleging disability beginning on October 30, 2015,[3] Tr. 220.  Plaintiff's application was initially denied by the Social Security Administration on September 8, 2016. Tr. 131.  Plaintiff then filed a written request for a hearing on November 14, 2016. Tr. 141-42.  The first hearing took place before an Administrative Law Judge ("ALJ") on July 17, 2018, Tr. 27-87, and the second on October 18, 2018, Tr. 88-106. The ALJ issued a written decision to Plaintiff on January 10, 2019, denying her claim.  Tr. 15-23.  The Appeals Council denied Plaintiff's request for review on April 14, 2020.  Tr. 1-3.  Plaintiff then commenced this action.  Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

The scope of review of a disability determination involves two levels of inquiry.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  The Court's review for legal error ensures "that the

---

[2] All references to the administrative transcript (Dkt. 11) are denoted "Tr. ____." Page numbers for documents contained the transcript correspond to the pagination located in the lower right corner of each page.

[3] Plaintiff applied for both disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  "To be entitled to [DIB], claimants must demonstrate that they became disabled while they met the Act's insured status requirements." *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019), as amended (Apr. 30, 2019) (citing 42 U.S.C. § 423(a)(1)(A),(c)(1).  The Social Security Administration uses the same five-step evaluation process to determine eligibility for both DIB and SSI programs under the Act.  *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.    Disability Determination

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(2), 416.920(a)(2). At the first step, the ALJ determines

3

whether the claimant currently is engaged in substantial gainful employment. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv), (e) and 416.920(a)(4)(iv), (e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 404.1545. After determining the claimant's RFC, the ALJ completes step four. *Id.* §§ 404.1520(e), 416.920(e). The ALJ then determines if the claimant can perform past

4

relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If she can perform past

work, she is not disabled and the analysis ends. *Id.* §§ 404.1520(f), 416.920(a)(4)(iv).

But if the claimant cannot perform past relevant work, the ALJ proceeds to step

five. *Id.* §§ 404.1520(a)(4)(iv), (f) and 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing

that the claimant is not disabled because the claimant is physically and mentally

capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g) and

416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Specifically, the Commissioner must prove that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in

the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting

*Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I.    The ALJ's decision

The ALJ first found that Plaintiff met the Act's insured status requirements

through June 30, 2020. Tr. 17.  The ALJ then proceeded through the sequential

evaluation process discussed above.

At step one, the ALJ determined Plaintiff had not engaged in substantial

gainful activity during the period from her alleged onset date, October 30, 2015,

through the date of the ALJ's decision, January 10, 2019 (hereinafter the "relevant

period"). *Id.* At step two, the ALJ determined that Plaintiff had the following

severe impairments: bilateral carpel tunnel syndrome, anxiety, depression,

5

attention deficit disorder, and obesity. *Id.* At step three, the ALJ found that none

of Plaintiff's limitations met or equaled a listed impairment in 20 C.F.R. Pt. 404,

Subpt. P, App. 1. Tr. 18. In making this determination, the ALJ considered the

following listings: 1.00 Musculoskeletal system (generally), 12.04 Depressive,

bipolar and related disorders, and 12.06 Anxiety and obsessive-compulsive

disorders. *Id.*

At step four, the ALJ determined Plaintiff had the RFC to perform light work

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[4] with the following exceptions:

Plaintiff "can frequently bilaterally finger and handle. The claimant can frequently

reach. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant

can never climb ladders, ropes, or scaffolds and the claimant must avoid

unprotected heights and the use of heavy machinery." Tr. 19. The RFC also limited

Plaintiff to a low stress work environment, specifically one with simple routine

tasks, basic work-related decisions, rare changes in the workplace setting,

occasional and superficial interaction with the public, occasional interaction with co-

workers, and frequent interaction with supervisors. Tr. 19.

Also at the fourth step, the ALJ found that Plaintiff was capable of

performing her past relevant work as a housekeeper/cleaner, DICOT 323.687-014,

1991 WL 672783, and cashier, DICOT 211.462-010,1991 WL 671840. Tr. 22.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
be very little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls." *Id.*

6

Accordingly, the ALJ concluded that Plaintiff was not disabled and did not continue to step five.  Tr. 23.

## II.   Analysis

Plaintiff argues that the ALJ failed to evaluate hypertension with lower extremity edema, Dkt. 12-1, at 13, and chronic back pain with sciatica, *id.* at 15. Plaintiff also argues that the ALJ did not fulfill his duty to "develop the record with a treating source statement," *id.* at 16, in light of her *pro se* status, *id.* at 17.[5]

### A. The ALJ did not err in failing to evaluate explicitly Plaintiff's hypertension and back pain.

In formulating a claimant's RFC, an ALJ will "consider[] only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).  The applicable regulations state that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §§ 416.921, 404.1521.[6]  An acceptable medical source's statement alone that a claimant suffers from an impairment is, however, insufficient evidence to establish disability. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008).  In other words, a "mere

---

[5] This Court has considered Plaintiff's remaining arguments and finds them to be without merit.

[6] "Acceptable medical sources" include licensed physicians and licensed psychologists.  *Id.* at §§ 404.1521(a)(1),(2), 416.921(a)(1),(2).  Nurse practitioners and physician's assistants were not considered to be acceptable medical sources at the time that Plaintiff filed her claim but were considered "non-acceptable medical sources" or "other sources."  *Id.* §§ 404.1513(d)(1), 416.913(d)(1).

diagnosis without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Id.* (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 104 (2d Cir. 2003)). And "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008) (internal quotation marks and citation omitted). This burden includes furnishing evidence that the alleged impairment(s) "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

Plaintiff alleges that the ALJ erred by failing to address explicitly evidence documenting her diagnoses of, and treatment for, chronic back pain and hypertension with edema. Dkt. 12-1, at 13, 15. She further contends that this failure was harmful because the RFC did not include limitations "to elevate her legs to combat the lower extremity edema," *id.* at 14, nor any limitation for sitting, standing, walking, or lying down, which exacerbated her back pain, *id.* at 15. But Plaintiff did not meet the aforementioned burden to establish that these impairments were severe enough to be disabling.

The evidence that Plaintiff cites in support of her argument establishes that she was diagnosed with back pain and hypertension with edema. *See id.* at 13 (citing Tr. 452, 456, 461, 465); *id.* at 15 (citing Tr. 369; 371, 452, 449, 454, 455).

8

These records also show that she received treatment for these conditions during the relevant period. *See id.* at 13-14 (citing Tr. 369, 378, 382, 390, 449, 456, 461, 465) (treatment records documenting swelling and bilateral edema in Plaintiff's legs linked to hypertension); *id.* at 15 (citing Tr. 372, 376, 448, 452, 455, 458, 459) (records and examination findings documenting Plaintiff's treatment for radiating back pain including use of pain medications, injections, and physical therapy). None of these records, however, contains evidence of relevant work-related limitations stemming from Plaintiff's impairments that would warrant a disability finding. *See Rivers*, 280 F. App'x at 22.

None of the records Plaintiff cites contains any objective medical findings of work-related limitations stemming from back pain. *See* Dkt. 12-1, at 15 (citing Tr. 66, 303, 368, 372, 375, 448, 455, 464) (treatment records and testimony documenting Plaintiff's subjective statements that her back pain limited her ability to walk, sit, and stand and interfered with sleep). While the ALJ is "required to take the claimant's reports of pain and other limitations into account," he is "not required to accept the claimant's subjective complaints without question [and] he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see also* SSR 96-7p, 1996 WL 374186, at *5 (indicating that the ALJ will evaluate a claimant's statements along any other relevant information in case record and "draw appropriate inferences and conclusions about the credibility of the [claimant's] statements"). And Plaintiff's subjective "statements about [her] pain or

9

other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a).

The records cited by Plaintiff also do not support her contention that the ALJ erred in failing to include a limitation for "elevat[ing] her legs to combat the lower extremity edema" in the RFC. Dkt. 12-1, at 14. The records Plaintiff cites contain recommendations from several non-acceptable medical sources advising Plaintiff to elevate her legs to relieve swelling, *id.* (citing Tr. 369, 381, 390), and Plaintiff's own statement that, on one occasion, her edema rendered her "[u]nable to do work/activity" during the preceding week, *id.* (citing Tr. 379). The ALJ was not required to consider explicitly any of this evidence in making his determination because none of these records included a statement containing "judgments about the nature and severity of [Plaintiff's] impairment(s), including . . . what [Plaintiff] can still do despite impairment(s)." *See* 20 C.F.R. §§ 404.1527(a)(1), (f), and 416.927(a)(1), (f). And Plaintiff does not allege that any of these treatment notes contained opinion evidence that the ALJ would have been required to address. *See id.* §§ 404.1527(f), 416.927(f).

Even if these records did contain an opinion from one of Plaintiff's "other sources" that the ALJ did not adopt, the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," even though that "conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision." *Schillo v. Kijakazi*, 31 F.4th 64,

78 (2d Cir. 2022) (adopting the court's prior holding in *Matta v. Astrue*, 508 F. App'x
53, 56 (2d Cir. 2013) (summary order)); *see also Richardson,* 402 U.S. at 399.

The Commissioner responds that the ALJ need not have considered these
treatment notes because he properly relied on the consultative opinion of Rita
Figueroa, M.D., to determine that Plaintiff's back pain and hypertension with
edema did not cause any work-related limitations. Dkt. 16-1, at 7.  The ALJ gave
"great weight" to Dr. Figueroa's opinion, finding it "consistent with the medical
evidence of record." Tr. 21.  In her opinion, Dr. Figueroa observed "edema around
both [Plaintiff's] ankles and feet" and diagnosed Plaintiff with hypertension.  Tr.
325.  Dr. Figueroa's opinion did not contain a diagnosis of chronic back pain, nor did
it indicate that Plaintiff reported any related symptoms.  Tr. 323, 325.  In fact, Dr.
Figueroa observed normal musculoskeletal functions in Plaintiff's back, hips, knees,
and ankles upon examination.  Tr. 325.  She also found "strength 5/5 in [Plaintiff's]
upper and lower extremities." *Id.*  Dr. Figueroa ultimately found no limitations
related to Plaintiff's edema or back pain.  Tr. 326 (Dr. Figueroa's medical source
statement concluding that Plaintiff's only limitation resulting from her diagnoses
was "a moderate limitation for activities that require repetitive and prolonged fine
motor skills").

The ALJ referenced other pages from the same exhibits containing the
treatment notes Plaintiff alleges he ignored, evidencing he was aware of the
evidence she cites and that he considered it.  *Compare* Tr. 18, 20, 22 (the ALJ's
decision citing Exhibits "9F/30" and "3F/10"), *with* Dkt. 12-1, at 13-15 (Plaintiff's

brief citing various pages from Exhibits 3F and 9F that the ALJ did not explicitly reference). Moreover, the ALJ "does not have to state on the record every reason justifying a decision," nor is he "required to discuss every piece of evidence submitted." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012)) (internal quotations and citation omitted).

The records that Plaintiff cites give "no indication . . . of any condition that significantly limits [her] ability to perform basic work tasks." *Duran v. Comm'r of Soc. Sec.*, 296 F. App'x 134, 136 (2d Cir. 2008). Accordingly, Plaintiff did not meet her "burden for proving a disability," *Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996) (unpublished) (citing 20 C.F.R. § 404.1512(a),(c)), in regard to back pain and hypertension with edema—"[she] did not furnish the ALJ with any medical evidence showing how these alleged impairments limited [her] ability to work," *Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012). "A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012). And the ALJ properly relied on substantial evidence in making his determination that contradicted the treatment notes Plaintiff cites, including Dr. Figueroa's evaluation of Plaintiff's functional limitations.

Even if the ALJ did err in failing to address explicitly the evidence Plaintiff indicates related to back pain and hypertension with edema, however, that error

was harmless.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding

harmless error where "application of the correct legal principles to the record could

lead [only to the same] conclusion").  The treatment notes cited by Plaintiff, or even

the record as a whole, do not establish that these impairments are medically

determinable, let alone of sufficient severity to disturb the ALJ's determination.

*See Duran*, 296 F. App'x at 136 (upholding the ALJ's disability determination where

the plaintiff "had presented no evidence of 'any impairment or combination of

impairments which significantly limits [his] physical or mental ability to do basic

work activities'") (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

   **B. The ALJ properly assisted Plaintiff in light of her *pro se* status and
       was not required to take further action to develop the record where
       it already contained sufficient evidence upon which to base his
       conclusion.**

   Plaintiff argues that the ALJ "failed to properly develop the record with a

treating source statement" where the record "did not contain any non-conclusory

opinions from Plaintiff's treating physicians."  Dkt. 12-1, at 16.  She further argues

this duty was heightened "in light of Plaintiff's *pro se* status."  *Id.* at 17.

   In general, an ALJ "will make every reasonable effort to help [the claimant]

get medical evidence from [the claimant's] own medical sources" before making a

determination.  20 C.F.R. §§ 404.1512 (b)(1), 416.912 (b)(1). "Every reasonable effort

means that [the ALJ] will make an initial request for evidence from [the claimant's]

medical source . . . and, at any time between 10 and 20 calendar days after the

initial request, if the evidence has not been received, [the ALJ] will make one

follow-up request to obtain the medical evidence necessary to make a

determination." *Id.* §§ 404.1512(b)(1)(i), 416.912(b)(1)(i). In cases where, as here, the claimant is not represented at the hearing stage, the ALJ must "affirmatively assist a *pro se* claimant in developing a record before adjudicating the merits of the claimant's applications for benefits." *Moran,* 569 F.3d at 110. However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa,* 168 F.3d at 79 n.5 (quoting *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir.1996)).

The ALJ also "will request a medical source statement [from an acceptable medical source] about what [the claimant] can still do despite [her] impairment(s)." 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).[7] But "remand is not always required when an ALJ fails in his duty to request [treating source] opinions, particularly where, as here, the record contains sufficient evidence from which [the] ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 33-34 (2d Cir. 2013).

Here, the ALJ relied on three consultative medical opinions to determine the RFC, Tr. 21, none of which found that Plaintiff suffered from functional limitations caused by hypertension with edema or chronic back pain, *see* Tr. 108-117, 318-321, 323-26. The ALJ also relied on treatment records from a variety of Plaintiff's

---

[7] This section was amended, effective March 27, 2017. *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Plaintiff applied for disability benefits before the date the changes became effective, her claim is governed by the prior regulation. *See id.* at 5844-46.

medical sources that substantiated the opinions.  *See* Tr. 20-21.  In other words,

"there was a complete record before the ALJ consisting of medical opinions,

treatment notes, and test results from [the relevant period], as well as [Plaintiff's]

own testimony" upon which the ALJ based his determination.  *Schillo*, 31 F.4th at

76 (distinguishing the court's previous finding in *Rosa*, 168 F.3d at 79-80, where the

"ALJ should have sought additional information to fill a record consisting only of

sparse and conclusory notes of a single treating physician").  Moreover, "[a]lthough

[the ALJ] will request a medical source statement . . . the lack of the medical source

statement will not make the report incomplete."  20 C.F.R. §§ 404.1513(b)(6),

416.913(b)(6).

Additionally, there is no indication that Plaintiff was prejudiced because of

her *pro se* status.  In addition, the ALJ took affirmative steps to ensure that

Plaintiff understood her right to be represented and was able to procure assistance

of counsel.  *See* Tr. 91, 94-102 (hearing transcript where the ALJ explained to

Plaintiff the relative benefits of proceeding with attorney representation, then

postponed the hearing for several months so that Plaintiff could retain an attorney

and provided her with a list of referrals).  As such, remand is not warranted on this

basis.

Because "the ALJ's decision was neither contrary to the substantial evidence

in the record, nor did it result from any legal error," remand is not warranted.  *Bell

v. Berryhill*, No. 16-CV-193, 2018 WL 328932, at *5 (W.D.N.Y. Jan. 9, 2018); *see also

Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

## CONCLUSION

For the above reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 16) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 12).  The Clerk of the Court will close this case.


SO ORDERED.


Dated:      May 11, 2022
            Buffalo, New York

                              JOHN L. SINATRA, JR.
                              UNITED STATES DISTRICT JUDGE